MAYER & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4703.   Promulgated December 23, 1927.

*Byron V. Graham, Esq., Hugh C. Bickford, Esq.,* and *R. Kemp Slaughter, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

818

820

Milliken: Petitioner complains that respondent refused to permit it to return so much of its income as was derived from installment sales on the basis provided by section 212(d) of the Revenue Act of 1926. This section is made retroactive by section 1208 of the same Revenue Act. Section 212(d) provides in part:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the toal profit realized or to be realized when the payment is completed, bears to the total contract price.

Section 1208 reads:

The provisions of subdivision (d) of section 212 shall be retroactively applied in computing income under the provisions of the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, the Revenue Act of 1921, or the Revenue Act of 1924, or any of such Acts as amended. Any tax that has been paid under such Acts prior to the enactment of this Act, if in excess of the tax imposed by such Acts as retroactively modified by this section, shall, subject to the statutory period of limitations properly applicable thereto, be credited or refunded to the taxpayer as provided in section 284.

Respondent does not take the position that petitioner did not regularly sell or otherwise dispose of its personal property on the

installment plan but confines himself to the contention that the books and records of petitioner were not kept in such a manner as to disclose sufficient information upon which to base a return on such a basis.

The facts stipulated disclose that petitioner was engaged in the retail furniture business; that it sold for cash, for credit, and on the installment plan; and that it kept its books on the accrual basis. Petitioner employed accountants to ascertain from its books and records the facts detailed in the findings of fact. We are thus placed in possession of the amount of gross sales, of the amount of sales of cash and credit, and the amount of sales on the installment plan. We know the cost of all goods sold and the amount of gross profits attributable to such sales. We know the amount of cash received each year on installment sales. The element which is absent is the exact amount of gross profit attributed to the installment sales. This hiatus results from the fact that while we know the cost of all goods sold, whether for cash or credit or on the installment plan, we do not know the precise cost of all goods sold on the installment plan. This was the situation which presented itself in the *Appeal of Blum's, Inc.*, 7 B. T. A. 737. We there applied a composite percentage rate of gross profit on all sales and said with reference to such method:

> * * * Where, as in the case of this petitioner, cash sales are made at a profit considerably less than that to be realized on the installment sales made within the year, it is true that the composite percentage rate of gross profit will be less than the actual percentage of gross profit on installment sales alone; and it might appear, at first hand, that by using this composite percentage rate of gross profit the petitioner would escape taxation on a portion of the profits from installment sales. However, while the petitioner would apply the lower composite percentage rate to the installment payments, at the same time it would apply the same percentage rate to the receipts from cash sales, showing a much greater profit from cash sales than actually realized. The method works out so that the petitioner would return as income, in any taxable year, on account of sales made within that year, an amount in excess of the actual profit on cash sales plus the profits actually realized through collection of installment payments relating to installment sales made in the same year; and such excess will always be the difference between an amount obtained by applying the composite percentage rate to the gross contract price of all installment sales made within the year and that obtained by applying the actual percentage rate of gross profit on installment sales to the same base. The excess reported is taken care of in subsequent years, during which the remaining installment payments will be received, through the application of the same composite percentage rate to the collections made in those years on account of the sales made in the prior year. Under this method the petitioner will ultimately return all of its income—nothing more nor anything less. We believe the suggested method is a reasonable interpretation of the statute in the fulfillment of its underlying purpose, and will clearly reflect income to be returned by the use of the install-

ment sales method. As the Board said in the *Appeal of B. B. Todd, Inc.*, 1 B. T. A. 762, "The entire plan of income taxation recognizes the fact that income is a matter, at best, of estimate; and can never be reduced to absolutely definite terms in the case of a large modern business institution."

We are of the opinion that petitioner's income from installment sales should be computed under the provisions of section 212(d) and that the rules and procedure laid down in *Blum's Inc., supra*, should be followed so far as applicable. Cf. *L. S. Weeks Co.* v. *Commissioner*, 6 B. T. A. 300; *Warren Reilly* v. *Commissioner*, 7 B. T. A. 1327; *Redlick-Newman Co.* v. *Commissioner*, 8 B. T. A. 719, and *Mrs. C. H. Robinson* v. *Commissioner*, 8 B. T. A. 972.

Petitioner's last contention is that it should not be required to report in the year received, installment payments on goods sold in previous years where the income from such sales has been returned for taxation. The principal ground for this contention is that it results in double taxation. Double taxation is not to be presumed, but if the taxing statute is clear it is not invalid. Cf. *Ernest M. Bull, Executor*, v. *Commissioner*, 7 B. T. A. 993. Here the express words of section 212(d) require that all installments received in the taxable year shall be returned. That the Congress contemplated that double taxation might result is shown by provision in section 1208 for credits and refunds, but, and this is quite important, makes such credits or refunds subject in each case to the period of limitation applicable. If the period of limitation has expired, no credit or refund can be made.

Petitioner next contends that in no event should installments received in payment for goods sold prior to the effective date of the Revenue Act of 1916, be returned, since section 1208 does not amend any Revenue Act of prior date. This contention overlooks the fact that in this case we are not called upon to compute any taxes under the Revenue Act of 1913 (38 Stat. 114) but that the taxes in this case are to be computed under the Revenue Acts of 1918 and 1921. Lastly, these contentions disregard the vital fact that petitioner was not compelled to make its returns under section 212(d) but did so of its own volition. When it changed its method of reporting from the accrual method to the installment method, it was called upon to report all of its income from installment sales under that method. It must treat all such items of income consistently. It can not return under both methods. To follow both methods would result in distortion of income. See *Appeal of B. B. Todd, Inc.*, 1 B. T. A. 762; *Warren Reilly* v. *Commissioner, supra*. These contentions are similar to the contentions which were considered at length under the *Appeal of Blum's, Inc., supra*, and we adhere to the views there expressed.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by PHILLIPS and MARQUETTE.